SCHMITT, Respondent, vs. MILWAUKEE STREET RAILWAY COM-
PANY, Appellant.

*December 13, 1894 — January 8, 1895.*

(1, 2) *Credibility of witnesses: Instructions to jury.* (3) *Assault and bat-
tery: Damages: Injury to reputation.*

1. An instruction that the testimony of a greater number of credible
witnesses whose statements are reliable, on one side, may be con-
sidered of more reliance and more worthy of confidence and trust
than the testimony of a lesser number of witnesses of equal credi-
bility, is *held* to have been erroneous, in that attention was not
called to the relative intelligence of the witnesses, their oppor-
tunity to observe what took place, the attention they paid to the
occurrence, or their ability to recall and state it in its details cor-
rectly.

2. To authorize the jury to reject the entire testimony of a witness on
the ground that he had knowingly testified falsely in the case,
such false testimony must have been in relation to some material
fact.

3. In an action for assault and battery, by a physician who had been
ejected from a street car, instructions allowing the jury to con-
sider the injury to plaintiff's reputation, in the way of disgrace
brought upon him, and the impairment of his social standing or
condition, by reason of his expulsion from the car, as a substantive
ground of damages, were erroneous.

APPEAL from a judgment of the superior court of Mil-
waukee county: R. N. AUSTIN, Judge. *Reversed.*

This action was brought by the plaintiff to recover from
the defendant damages claimed to have been sustained by
him by being expelled by the defendant's conductor from
one of its cars. The plaintiff, in his complaint, claimed that
he had paid his fare; that the conductor in charge of the
car again demanded fare of him, and upon his refusal to
pay it seized the plaintiff by the collar and threw him off
the car so that he fell to the ground; that the said assault
and battery was committed in the presence of a large num-
ber of people, and that it was without cause or justification;

and that he "was damaged thereby in the sum of $5,000 in his business, standing, and feelings." The answer was a general denial.

The evidence tended to show that the plaintiff made payment of his fare with a circular metallic ticket or token, and that it was dropped in passing from the plaintiff's hands to the conductor's, and there was a dispute whether it was dropped by the plaintiff before it reached the conductor, or by the latter after it had passed into his possession. There was also a dispute as to the incidents connected with the plaintiff's expulsion from the car; he testifying that the conductor threw him off violently, while the car was in motion, without warning or opportunity to get off; while evidence was given on the part of the defendant tending to show that the plaintiff was notified that he would have to pay his fare or get off; that the car was stopped to allow him to get off, and upon his refusal the conductor used only so much force as was necessary to overcome the resistance of the plaintiff in putting him off the car, and then the plaintiff stepped off upon the ground. The plaintiff was a physician, residing in Milwaukee, having a fair practice. He claimed that he was put off while the car was in motion; that he landed on the ground on his hand, and his hat rolled into the gutter about ten feet away; that the occurrence took place on Walnut street, near Seventeenth. There was testimony tending to show that the car was going pretty fast at the time. One who witnessed the transaction was asked on the trial whether he thought the indignity to the plaintiff would injure his business or reputation as a physician, but the inquiry was excluded. Both the conductor and the motorman testified that the car stopped before the plaintiff stepped off the step on the side, and that the conductor did not use more force than was necessary. It appeared in evidence that the plaintiff made complaint to the defendant company, and it was investigated before the action

was brought. There was a decided conflict between the evidence of the plaintiff and that of the conductor as to the transaction at the time he was put off, and between the witnesses called by the plaintiff and the defendant's witnesses.

The court instructed the jury that "where there are a greater number of credible witnesses whose statements are reliable, testifying on one side of the case, as against a certain number on the other, their testimony may be considered of more reliance, and more worthy of confidence and trust, than a lesser number of witnesses of equal credibility;" and, further, that if they should find "that any witness has been directly contradicted by the testimony of other credible witnesses, and you believe he has been guilty of telling that which is untrue,— of wilfully and knowingly stating a falsehood,— then you are at liberty to reject the entire testimony of that witness;" that "the damages in a case of this kind are the personal injuries, if any, that were inflicted upon the plaintiff. He does not claim that he sustained any particular bodily injury by reason of the act done by the conductor. You may also, in determining what damages you will award to him, consider his condition in life, *his profession*, his social relations by reason of his profession. You may consider the injury to his feelings, and the injury *to his reputation* in the way of disgrace that has been brought upon him, and the *impairment, if any*, of his social standing or condition."

The jury found for the plaintiff, and assessed his damages at $500, and from a judgment against the defendant thereon it appealed.

For the appellant there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. P. Miller*.

For the respondent there was a brief by *Austin & Hamilton*, and oral argument by *W. H. Austin*.

PINNEY, J. The instructions of the court upon what effect should be given to the evidence, in certain respects, we think, were erroneous.

1. The jury were instructed, in substance, that the testimony of "a greater number of credible witnesses whose statements are reliable, on one side, may be considered of more reliance and more worthy of confidence and trust than the testimony of a lesser number of witnesses of equal credibility." This instruction was misleading, particularly in relation to a transaction like the one under consideration, where often no two witnesses see it at the same moment or from the same point of view. It deals only with the question of credibility, and it left the jury in the case mentioned to determine the issue upon the mere preponderance of numbers on one side or the other, without calling their attention to the relative intelligence of the witnesses, their opportunity to observe what took place, what attention they paid to the occurrence, or their ability to recall and state it in its details correctly. The real question was as to the credibility of the statements, and not as to the credibility in a general sense of the witnesses. It is a matter of common experience that witnesses of equal credit often differ in regard to such transactions, by reason of the considerations mentioned; and the truth depends not so much upon the credibility of the witnesses as such, as upon their means of knowledge, time and point of observation, strength of memory, and clearness of recollection.

2. The instruction, in substance, that, "if the jury believe that any witness has been guilty of telling that which is untrue,— of wilfully and knowingly stating a falsehood,— then the jury are at liberty to reject his entire testimony," was erroneous. The law is very well settled that in order to authorize the jury to reject the entire testimony of a witness on the ground that he had knowingly testified falsely in the case, such false testimony must have been in relation to some *material* fact. *Mercer v. Wright*, 3 Wis. 645; *Morely v. Dunbar*, 24 Wis. 183. This was so held in the recent case of *Little v. Superior R. T. R. Co.* 88 Wis. 402, in which many authorities are cited to the same effect.

Schmitt vs. Milwaukee Street R. Co.

3. The action was for injury to the plaintiff's person,— for assault and battery,— although the plaintiff did not claim that he had sustained any particular bodily injury by reason of the act of the conductor in putting him off the cars. The evidence shows that physical force was used in putting him off, unnecessarily as he contended, while the defendant insists that no more force was used than was necessary. If the act was wrongful and accompanied with circumstances of insult or indignity, these facts, as well as the consequent injury to his feelings, causing humiliation or mental suffering or wounding his pride, are proper for the consideration of the jury in fixing the amount of damages. His situation in life and reputation may have a bearing on this subject, rendering his injury in these respects more acute than it otherwise would be; but no allowance can be made for injury to his business or to his professional reputation. The action was not for an injury to plaintiff's character or reputation, professional or otherwise. There was no evidence of injury to his business reputation as a physician, and there was no case before the jury authorizing an award of damages to the plaintiff for injury to his reputation or professional standing. For injuries such as these the well-understood remedy is by action for slander or libel, and they cannot form the proper ground for an award of damages in the present action for assault and battery, or for wrongful expulsion from a street car. The facts stated in the complaint are clearly decisive of the nature of the action, and it is not affected by the peculiar prayer for damages. The instructions of the court to the jury that, in assessing the plaintiff's damages, they might consider his condition in life, his profession, his social relations by reason of his profession, and the injury to his feelings, *and* the injury to his *reputation* in the way of disgrace that has been brought upon him, and the *impairment*, if any, of his social standing or condition, were erroneous. These instructions

left the jury to consider the injury to the plaintiff's reputation, in the way of disgrace brought upon him, and the impairment of his social standing or condition, by reason of his expulsion from the car, as a substantive ground of damages, without limiting the award to injury to his feelings, causing humiliation or mental suffering or wounding his pride. These instructions tended to mislead the jury, and to cause them to award damages such only as could be recovered in an action for injury to the plaintiff's character or reputation, personal or professional. The law does not, we think, allow the assessment of damages in an action for assault and battery to proceed upon grounds such as are stated in the instructions in question.

For these reasons the judgment of the superior court must be reversed.

*By the Court.* — The judgment of the superior court is reversed, and the cause remanded for a new trial.